IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN KIMPEL, | ) | CASE NO. 3:08 CV 1026 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| CLIFFORD SMITH, *Warden*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the petition of Kevin Kimpel for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Kimpel is currently incarcerated at North Central Correctional Institution in Marion, Ohio, where he is serving a seven-year sentence imposed by the Williams County Court of Common Pleas after he pled guilty in 2006 to aggravated assault, domestic violence, and attempted aggravated burglary.[3]

In his petition, Kimpel raises three grounds for relief, the first two of which the State asserts should be dismissed for lack of a constitutional issue,[4] and the third of which the State asserts should be dismissed because its argument is not cognizable.[5]

---

[1] ECF # 3.

[2] ECF # 1.

[3] *Id.* at 2.

[4] ECF # 7 at 11.

[5] *Id.* at 20.

## Statement of the Facts and Case

**A.     The underlying facts and state conviction**

The following facts were set forth by the Williams County Court of Appeals.[6]  On August 19, 2006, police officers responded to a report that a physical altercation between Kimpel and his girlfriend's ex-boyfriend, Sean Miller, had occurred at Miller's home.[7] According to Miller, Kimpel and he had engaged in a verbal argument over the telephone.[8] Following the conversation, according to Kimpel, he went to Miller's house "to talk."[9] Miller told police that upon arrival, Kimpel forced open the door and entered his residence, causing damage to his door.[10]  Kimpel disputes this, maintaining that Miller opened his door and started attacking him, both parties agree that a fight ensued.[11]  Police photographs of Miller reveal two black eyes, numerous cuts on his face, and a bite mark below his armpit.[12] After the altercation, officers found Kimpel's hat and sunglasses inside Miller's home, though Kimpel denied ever entering the home.[13]

---

[6] Factual findings made by the state appellate court on its review of the record are presumed correct by the federal habeas court.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[7] ECF # 7 (state court record) at 132.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

In a separate incident, about three months later, police responded to a domestic violence call at Kimpel's home.[14]  There, officers noted a large scrape on the right elbow of Kimpel's live-in girlfriend, Janice Reed.[15]  Additionally, both of her knees were swollen and red, she had red marks on her neck, a bruise on her chest, and a golf ball sized knot on the right side of her head.[16]  Reed told police that Kimpel grabbed her by the throat several times, threw her onto the cement floor, across the washer and dryer, and continued to choke her until she could no longer breathe.[17]  According to Reed, Kimpel let her go before she passed out.[18]

Kimpel was indicted by a Williams County grand jury on three counts:  domestic violence, aggravated burglary, felonious assault.[19]  The charge of domestic violence resulted from assault on his live-in girlfriend, Reed.[20]  The charges of aggravated burglary and felonious assault resulted from the fight between Kimpel and Miller.[21]  Kimpel pled not guilty but, following plea negotiations, agreed to plead guilty to domestic violence, attempted aggravated burglary, and aggravated assault, with the state's recommendation that the

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 133.

sentences for these offenses run concurrently, for a total of seven years imprisonment.[22]  On

February 6, 2006, the trial court accepted Kimpel's guilty pleas, and found him guilty of

domestic violence, attempted aggravated burglary, and aggravated assault.[23]  About a month

later, Kimpel replaced his original counsel and filed a presentence motion to withdraw his

guilty pleas to all three counts.[24]  The trial court held a hearing and denied the motion, and

on April 5, 2006, the trial court sentenced Kimpel to seven years of incarceration in

conformity with the state's recommendation.[25]

**B.**      **The direct appeal**

Kimpel filed a timely notice of appeal to the Sixth District Court of Appeals, Williams

County, Ohio, and set forth one assignment of error:[26]

> The trial court should have granted the defense Motion to Withdraw Plea, filed
> before sentencing.[27]

Under this assignment of error, Kimpel claimed that the trial court should have granted the

defense Motion to Withdraw, because Kimpel lacked material information as to the

application of contested facts to the law as to each of his counts.[28]  Kimpel claimed that his

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 33.

[27] *Id.* at 36.

[28] *Id.*

trial counsel failed to inform him of very relevant legal issues pertaining to each count in his plea, and the trial court failed to ascertain whether he was fully informed of the law.[29] Kimpel brought up three ways in which this lack of information hurt his decision to plead guilty.[30]  First, the charge of domestic violence may have been deemed unconstitutional because Kimpel and Janice Reed were not married.[31]  Second, aggravated burglary requires proof of intent to enter a premise, which Kimpel argues that he lacked.[32]  Third, "serious physical harm," which is required to be established for aggravated assault, has a statutory definition that is not common knowledge and was unknown to Kimpel, who may have been able to argue that he did not inflict serious physical harm.[33]

The State filed a brief in response, to which Kimpel filed a reply.[34]  On November 16, 2007, the court of appeals affirmed the judgment of the trial court.[35]  The court of appeals held that a trial court's decision to grant or deny a defendant's motion can only be overturned by a reviewing court if the decision was "unreasonable, arbitrary or unconscionable."[36]  The appeals court said that, since Kimpel's counsel informed him of the law as it currently stood,

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 54, 120.

[35] *Id.* at 138.

[36] *Id.* at 134.

and was not bound to give Kimpel an exact statutory definition of law, counsel was not ineffective.[37]  Thus, the trial court's decision to deny Kimpel's motion was not "unreasonable, arbitrary or unconscionable."

Kimpel timely appealed the appellate court's decision to the Ohio Supreme Court.[38] In his memorandum in support of jurisdiction, Kimpel asserted a single proposition of law:

> The trial court should have granted the defense Motion to Withdraw Plea, filed before sentencing.[39]

The State filed an opposition.[40]  On March 12, 2008, the Ohio Supreme Court declined jurisdiction and dismissed the case because it did not involve any substantial constitutional question.[41]

## C.    Petition for writ of habeas corpus

Kimpel, through counsel, filed the instant habeas petition with three grounds for relief:

> Ground One:  The State of Ohio deprived Mr. Kevin Kimpel of a meaningful review of whether his plea was knowing, intelligent and voluntary.[42]

> Ground Two: The State Appellate Court, in ruling on the appeal, established a new standard for effectiveness of counsel that cannot be allowed to stand.[43]

---

[37] *Id.* at 135, 136.

[38] *Id.* at 139.

[39] *Id.* at 146.

[40] *Id.* at 163.

[41] *Id.* at 181.

[42] ECF # 1 at 6.

[43] *Id.* at 8.

-6-

> Ground Three:  Ohio rules regarding jurisdiction before the Ohio Supreme
> Court deprive a person of a meaningful appeal if the appellate court bases its
> decision on a new principle of law that could not be anticipated.[44]

The State responded to grounds one and two by saying that Kimpel has no constitutional right to withdraw a guilty plea, that he entered a plea that was knowing voluntary and intelligent, and that the state appellate court applied the proper constitutional standard in determining the effectiveness of counsel.[45]  The State responded to the third ground, saying that the federal court cannot command the Ohio Supreme Court to hear a case, and that the Supreme Court did not have to grant review to Kimpel's case, because the appellate court did not issue a new interpretation of constitutional law.[46]

In his traverse, Kimpel said that the State misses the point by saying Kimpel has no constitutional right to withdraw a guilty plea.[47]  Kimpel said that the real question is whether he can demand a meaningful review of the denial of his motion.[48]  Kimpel also claimed that the appellate court's standard for effectiveness of counsel can be overcome by overwhelming evidence, which he claims his case has.[49]  Finally, Kimpel dismisses the relevance of the State's argument that the federal court cannot command the Ohio Supreme Court to hear a

---

[44] *Id.* at 9.

[45] ECF # 7 at 11.

[46] *Id.* at 20.

[47] ECF # 9 at 18.

[48] *Id.*

[49] *Id.* at 20.

case, since granting habeas corpus would send the case back to trial and not to the Ohio Supreme Court.[50]

## Analysis

**A.     Standard of review – state decision solely on state law grounds**

Usually, a federal habeas petitioner's claims will be evaluated in the federal court on the basis of whether the state court's adjudication of the petitioner's claims resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court.[51]  However, where, as here, the state court resolved the petitioner's claim in terms of state law, the federal habeas court must apply a different standard.

In *Maldonado v. Wilson*,[52] the Sixth Circuit noted that where the state court's denial of the petitioner's claim is based exclusively on state law, the federal habeas court must evaluate any federal constitutional challenge *de novo*, since there is no state court judgment in that regard that must be accorded any deference by the federal court.[53]  However, if the state court decides the matter as an issue of state law but then employs a "harmless error" analysis or makes alternative findings on harmless error,  the federal habeas court should

---

[50] *Id.* at 23, 24.

[51] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

[52] *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005).

[53] *Id.* at 476 (citation omitted).

-8-

accord the state court decision a modified level of AEDPA deference since the state court's alternative harmless error findings bear some similarity to a determination under the Due Process Clause as to whether the trial was fundamentally unfair.[54]  This modified deference standard "requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing [the state court decision] unless the state court's decision is contrary to or an unreasonable application of federal law."[55]

## B.      Standard of review – guilty plea/ineffective assistance of counsel

"A plea of guilty is more than a confession which admits the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."[56] Thus, because a guilty plea directly precludes the exercise of significant constitutional rights connected with trial, a plea will be constitutionally valid only if it is entered knowingly, intelligently, and voluntarily, since the plea operates as a waiver of those constitutional rights.[57] A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge against him and the direct consequences of the plea.[58]

---

[54] *Id*.

[55] *Id*. (citation omitted).

[56] *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

[57] *Id.* at 242; *Bousley v. United States*, 523 U.S. 614, 618 (1998).

[58] *Brady v. United States*, 397 U.S. 742, 748 (1970).

-9-

It is well-settled that a guilty plea may be found involuntary or not knowingly entered if it was induced by ineffective assistance of counsel.[59]  To prevail on a claim of ineffective assistance in the context of a guilty plea, the defendant must permit the reviewing court to establish ineffective assistance according the standard of *Strickland v. Washington*.[60]  In a guilty plea situation, this means that the defendant must show both that his counsel rendered constitutionally deficient representation and that such deficient representation resulted in prejudice to the defendant.[61]  Specifically as to establishing prejudice, the defendant must establish a reasonable probability that, but for his attorney's errors, he would not have entered the guilty plea but would have insisted on going to trial.[62]

In the end, as the Supreme Court stated in *Bradshaw v. Stumph*, "the constitutional prerequisite of a valid plea may be satisfied where the record reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."[63]

---

[59] *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

[60] *Id.* at 57-58 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

[61] *Id.* at 58-59.

[62] *Id.* at 59.

[63] *Bradshaw v. Stumph*, 545 U.S. 175, 183 (2005).

**D.**   **Kimpel has not shown that ineffective assistance by his trial counsel resulted in his plea being entered unknowingly, involuntarily, or unintelligently and, thus, this petition should be denied.**

*1.*   *Preliminary observations*

Essentially, Kimpel's claim for habeas relief arises out of his assertion that he should have been permitted to withdraw his negotiated guilty plea prior to sentence as not voluntarily and knowingly made because he did not fully understand the nature of the charges against him, due to the ineffectiveness of his trial counsel.  This particular claim, however, was presented to the Ohio appeals court as merely a "collateral" component of Kimpel's claim in that forum that the trial court abused its discretion in denying his motion to withdraw the plea.[64]  Thus, several preliminary observations must be made.

I note initially that the issue of whether Kimpel's plea was tendered willingly, voluntarily and knowingly is the only question upon which a federal habeas court may grant him any relief.[65]  As such, the present posture of this claim is not identical to how Kimpel framed the issue in state court where, as noted, the core argument was whether the trial court

---

[64] Kimpel here states in this regard that his appeal involved "blended issues" where the question of ineffective assistance was treated as a necessary "collateral" matter by the Ohio appeals court in reaching a decision on the state-law claim of abuse of discretion then before it.  ECF # 9 at 17.

[65] *See*, *Akemon v. Brunsman*, No. C-1-06-166, 2007 WL 2891012, at *12 (S.D. Ohio Sept. 29, 2007) ("As an initial matter, the Court is precluded from reviewing any claim that the trial court abused its discretion in denying petitioner's Rule 32.1 motion to withdraw his guilty plea"); *Paige v. Moore*, No.1:07-cv-969, 2008 WL 782587, at *5 (N.D. Ohio March 24, 2008).

abused its discretion in not allowing the withdrawal of the plea,[66] leaving as a "collateral" question whether Kimpel's plea was involuntary or unknowing as a result of the ineffective assistance of counsel.[67]

With this in mind, I note further that a good deal of complexity has been introduced into this case by Kimpel as he attempts to refashion his core claim from what he argued in Ohio courts as a single state-law issue of abuse of discretion into what he argues here as three claims for federal habeas relief. Notwithstanding this complexity, for the sake of simplicity, and because the only available basis for habeas relief requires it, I propose to address all Kimpel's claims under that single rubric of whether Kimpel's plea was voluntary, knowing, and intelligent.

---

[66] As noted here by the State, the question of whether the trial court abused its discretion is normally an issue of state law and so on-cognizable in a federal habeas proceeding. *See*, *Akemon*, 2007 WL 2891012, at *12; *Lor v. Lafler*, No. 05-cv-70357-DT, 2006 WL 1007647, at *2 (E.D. Mich. April 18, 2006) (no right to federal habeas relief on the grounds that state court failed to comply with state law in rejecting petitioner's pre-sentence motion to withdraw his guilty plea).

[67] This shift in how the claim is presented has produced an inordinate amount of confusing briefing as Kimpel has attempted to restate his state-law claim as federal claims for this petition. In fact, there is a serious question as to whether Kimpel ever fairly presented this claim as a federal issue to the state court. *See*, *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (same claim under the same legal theory must be presented to the state courts as to the federal habeas court). However, since fair presentment has not been raised by the State and, as will be seen later, I will recommend finding Kimpel's claim to be without merit, I do no more than note the fundamental shift in Kimpel's argument between the state courts and this one.

Essentially, Kimpel asserts that his plea was unknowing or not intelligently made in three respects due to the allegedly ineffective assistance of counsel.[68]  I will address each claimed instance of ineffective assistance in sequence after discussing the appropriate standard of review.

**2.      *Modified deference is the appropriate standard of review.***

I recommend first that Kimpel's claims be reviewed under the rubric of modified deference.  As noted, the Sixth Circuit's reasoning in *Maldonado* indicates that modified deference applies where the state court decision is based on state law but involves findings or analysis that go to fundamental fairness, a federal constitutional right.  Here, the situation is highly analogous.  The state appeals court ultimately resolved Kimpel's claims on the state law question of abuse of discretion but did so by employing the Supreme Court's *Strickland* test to determine if Kimpel's attorney rendered appropriate assistance in the course of Kimpel's plea negotiations.

As the Kansas federal court observed in *Gardner v. McKune*, when ineffective assistance is argued as a cause for an involuntary or unknowing plea, that ineffective

_____

[68] Properly understood, a claim that a guilty plea was not knowing or not intelligently made states a claim of violation of due process, since the question is whether the plea, which acts as a waiver of certain Constitutional rights (against self-incrimination, to a jury trial and to confront one's accusers), was an effective, valid waiver, since waivers must be an intentional relinquishment of a known right to be valid.  *Boykin*, 395 U.S. at 243 n.5 (1969) (citation omitted).  As the Court noted in *Gardner v. McKune*, No. 06-3149-KHV, 2007 WL 852645, at *4 n.6 (D. Kan. March 21, 2007), where ineffective assistance of counsel is argued as the cause for an unknowing plea, the ineffective assistance argument, conducted according to the *Strickland* standard, is "subsumed by and contained within" a due process analysis, as was done by the Supreme Court in *Hill*.

-13-

assistance argument is properly understood as taking place within the context of a due process analysis.[69]  Thus, although the Ohio court finally expressed its conclusion regrading Kimpel's claims in terms of state law, it conducted a federal due process analysis when it examined if Kimpel's trial counsel was ineffective during the plea discussions.

As such, the state court's decisional framework here is highly similar to the framework cited by the Sixth Circuit in *Maldonado* as meriting modified deference in that the federal due process element in this case is similar to the due process component in the admission of evidence.  Accordingly, I recommend utilizing modified deference in evaluating the state court decision in this case.

**3.**  ***Ohio's domestic violence statute***

In this instance of alleged ineffective assistance, Kimpel contends that his counsel failed to inform him before pleading guilty to a charge of domestic violence against his live-in girlfriend that Ohio's domestic violence statute was being challenged in Ohio courts as unconstitutional when applied to unmarried persons.

In addressing this argument, the state appeals court observed that, since the constitutional challenge to the statute was later overruled in the Supreme Court of Ohio and the law at the time was that the statute applied to Kimpel, Kimpel was not prejudiced at the time he entered the plea by his counsel not mentioning any pending challenges to the statute.[70]

---

[69] *Gardner*, 2007 WL 852645, at *4 n.6.

[70] ECF # 7, Attachment at 135.

-14-

Although Kimpel, in his traverse, vigorously contends that the record shows that he did not understand at the time of the plea that Ohio's domestic violence statute was subject to a constitutional challenge,[71] ascertaining Kimpel's level of understanding of ongoing challenges to the statute is not dispositive of the question of whether his attorney was ineffective.  As *Strickland* makes clear, establishing ineffective assistance of counsel requires showing both that counsel's performance was deficient – which here may arguably be related to what counsel told Kimpel concerning pending challenges to the statute – and that such deficiency prejudiced the defense.[72]

Thus, as regards any prejudice to Kimpel in this case, it must be observed initially that the constitutional challenges to the Ohio domestic violence statute were overruled.[73]  As such, it is also worth noting, as did the appeals court here, that it is undisputed that Kimpel's attorney correctly advised Kimpel of the law as it actually existed at the time.[74]

Most importantly, despite an extensive discussion at the plea withdrawal hearing between Kimpel's present attorney and the trial court concerning theoretically possible permutations to Kimpel's total plea arrangement if the constitutional challenge were resolved to Kimpel's advantage,[75] I find nothing in the record to show that Kimpel himself would have

---

[71] ECF # 9 at 19.

[72] *Strickland*, 466 U.S. at 687.

[73] *See*, *In re Ohio Domestic-Violence Statute Cases*, 114 Ohio St. 3d 430, 872 N.E.2d 1212 (2007).

[74] ECF # 9 at 19.

[75] *See*, ECF # 8, Attachment 2 at 17-20.

-15-

actually rejected the entire existing plea deal in favor of going to trial if he had known that some court challenges to this statute were working themselves up through the Ohio appellate system. In other words, there is nothing in this record to show that Kimpel would have rejected this comprehensive plea deal and elected to go to trial simply because he was told there was a possibility that the domestic violence statute may be altered at some unspecified future time by a court decision.

Accordingly, absent such a showing that "there is a reasonable probability that, but for counsel's errors, [Kimpel] would not have pled guilty and would have insisted on going to trial,"[76] I recommend finding, on this record, that the mere fact that Kimpel was unaware of pending challenges to the existing domestic violence statute does not make his plea of guilty invalid for being involuntary or unknowing. Thus, the denial of Kimpel's claim by the state appeals court, which should be accorded modified deference by this Court, should be found not contrary to or an unreasonable application of clearly established federal law.

**4.      *Attempted aggravated burglary and an "occupied structure"***

In this instance, Kimpel asserts that his trial attorney was ineffective – and thus his plea not knowingly made – because Kimpel did not clearly understand that attempted entry into an "occupied structure" was required to prove attempted aggravated burglary – the charge to which Kimpel pled guilty. Kimpel's argument here is that, absent a clear explanation from his attorney as to what an "occupied structure" meant in the context of this

---

[76] *Hill*, 474 U.S. at 59.

statute, Kimpel erroneously understood that he could be found guilty of attempted aggravated burglary if he was merely trespassing on the land of the victim's home.[77]

A careful review of the plea withdrawal hearing record discloses that this argument has no merit.  In the first instance, as that record demonstrates, Kimpel concedes that he understands the plain meaning of the term "occupied structure."[78]  Moreover, the record also demonstrates that there were extensive discussions prior to the plea between Kimpel and his trial counsel – an attorney with 26 years of experience, all as criminal defense counsel[79] – concerning the aggravated burglary count and how the facts, both as seen by Kimpel and the prosecution, affected Kimpel's liability to that charge.

In that regard, the record shows:

- there was a discussion prior to the plea among Kimpel, his trial counsel, the prosecutor and his assistant at which, after Kimpel stated his contention that he did not enter the victim's home and the state related its version that he did, the two sides agreed to amend the charge from aggravated burglary to attempted aggravated burglary;[80]

- Kimpel's attorney testified that he discussed with Kimpel the differences between the two offenses and why the charge was being amended, including, specifically, how the amendment would match up to the facts as both sides saw them;[81]

---

[77] *See*, ECF # 7, Attachment at 160 (appeals court decision); *see also*, ECF # 8, Attachment 2 at 34 (plea withdrawal hearing).

[78] ECF # 8, Attachment 2 at 37.

[79] *Id*. at 79.

[80] *Id*. at 37-39.

[81] *Id*. at 43-44.

-17-

- the fact that although Kimpel's lawyer understood that Kimpel "believed he never entered the home,"[82] counsel was aware that some of Kimpel's personal property was found inside the home and that therefore, due to this evidence, "there was some risk that a jury might believe that [Kimpel] did enter the home in question" and not believe Kimpel;[83] and

- that the evidence of Kimpel's property being found in the home coupled with evidence that Kimpel was the instigator of the confrontation that put him at least at the door of the victim's house would not be favorable to a jury accepting Kimpel's version of events.[84]

The testimony of the trial attorney at the plea withdrawal hearing concluded with his statement that he discussed with Kimpel the amended indictment, the elements of proof required to prove the charges in the indictment and how that related to the facts.[85] Specifically, the attorney testified that he discussed with Kimpel "why we were doing that [amending the indictment], [and] why that [amendment] was being offered in part after the conversation Mr. Kimpel had [] with myself and the Prosecutor [concerning the dispute as to whether Kimpel was ever actually inside the home of the victim]."[86]

Notwithstanding this testimony, Kimpel's current attorney asked Kimpel's trial attorney at the plea withdrawal hearing if had ever discussed the elements of "aggravated

---

[82] *Id*. at 44.

[83] *Id*.

[84] *Id*. at 45.

[85] *Id*. at 49.

[86] *Id*.

-18-

trespass" with Kimpel prior to the plea.[87]  The trial counsel stated "it never came up,"[88] noting that the issue they were facing was whether to accept a plea to attempted aggravated burglary offered by the prosecution or go to trial and "the question in my mind was can the State of Ohio prove the aggravated burglary."[89]

Kimpel argues that the Ohio appeals court essentially excused the conduct of the trial attorney in this case by "establish[ing] a new standard for effectiveness of counsel that cannot be allowed to stand."[90]  Specifically, Kimpel contends that the appeals court stated a "new principle" of effective assistance, "namely that counsel need not provide an 'exact' definition of the [terms within the] statute with which his client is charged," but instead may provide "an incorrect and misleading 'summary' of the relevant statutory provisions."[91]

In fact, the appeals court made no such declaration.  Rather, the state court's decision is consonant with the clearly established federal law on the duty of counsel concerning communication about the charged offenses in advance of a plea.  Specifically, as the Supreme Court stated in *Bradshaw v. Stumpf*,[92] "the constitutional prerequisites of a valid

---

[87] *Id.*

[88] *Id.* at 50.

[89] *Id*.

[90] ECF # 1 at 8.

[91] *Id.*

[92] *Bradshaw v. Stumpf*, 545 U.S. 175 (2005).

plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."[93]

As such, it is important to note that the Supreme Court in *Stumph* centers trial counsel's duties of explanation squarely on the particular charge the defendant is facing. Thus, according to *Stumph*, counsel can be adjudged competent if the nature of the charge as well as the elements of the crime have been communicated to the defendant, and, if that is evident from the record, the defendant's subsequent plea will be valid.

Here, as noted, the record shows that Kimpel's trial counsel testified as follows:

> So did I sit down and go through the indictment and what the elements of proof are in the indictment, you bet. That's in the charge itself. ... And we discussed how the facts in this case relates to the indictment. ... And then we discussed reducing the F1 [felony 1 – (the original burglary charge)] to the F2 for the attempt[ed aggravated burglary]. [W]e discussed why we were doing that, why that was being offered in part after the conversation Mr. Kimpel had, the conversation with myself and the prosecutor [concerning Kimpel's insistence that he never entered the victim's home].[94]

Viewing this testimony in light of the Supreme Court's teaching in *Stumph*, it is clear that Kimpel's counsel, as evidenced by his uncontroverted testimony at the plea withdrawal hearing, communicated to Kimpel the nature of the charge against him and the elements of

---

[93] *Id*. at 183.

[94] ECF # 8, Attachment 2 at 49.

-20-

that charge, including how that charge related to the facts of the case.[95]  Moreover, Kimpel's understanding of how the facts related to the elements of the charge was undoubtedly enhanced because he was included in negotiations between the prosecutor and his attorney where the burglary charge was discussed as it related to conflicting versions of the facts needed to prove the charge, a discussion that yielded an amended charge of attempted aggravated burglary – a development that favored Kimpel.

Thus, contrary to Kimpel's assertion that the state appeals court here was seeking to formulate new law concerning a defense counsel's duty to a client, it is Kimpel that seeks to fashion a new rule that defense counsel is constitutionally obligated to explain charges to the defendant that he does not face and do not arise out of the facts of the case.[96]  That is not the rule in *Stumph*, nor has Kimpel pointed me to any such rule in any other case of the United States Supreme Court.

Accordingly, I recommend finding first that Kimpel has not shown any deficiency in the representation of his trial counsel in this instance, when counsel's actual conduct is

---

[95] I would also note that, contrary to Kimpel's assertion at the plea withdrawal hearing (ECF # 8, Attachment 2 at 50-51), aggravated trespassing is not a lesser included offense to aggravated burglary.  *See*, *State v. Goldwire*, No. 19659, 2003 WL 22681369, at *5 (Ohio Ct. App. 2 Dist. Nov. 14, 2003).  Thus, there can be no duty under the *Stumph* standard to explain the elements of an offense that is not a lesser included offense to the one the defendant is charged with violating.

[96] *See*, ECF # 8, Attachment 2 at 50-51.  Kimpel's present counsel agreeing with the trial court judge that "all the evidence in this case is going turn on whether this defendant entered this, Mr. Miller's, mobile home, or attempted to enter it. .... We're not talking about him entering or attempting to enter his pasture or his front lawn."

measured against the Supreme Court's statement of duties in *Stumpf*.  Thus, Kimpel has

failed to establish the first, or deficient representation, prong of *Strickland*.

Moreover, I recommend finding that Kimpel has also not established the second, or

prejudice, prong of *Strickland* in this claim.  As with the prior claim, there is no evidence in

the record that, had Kimpel known of the elements of aggravated trespassing, he would have

rejected the plea in this case.

In that regard, if Kimpel believed that he never entered, or even attempted to enter,

the trailer, he was always free on that basis alone to simply reject any plea that included an

admission of that fact, regardless of whether his conduct theoretically rendered him

potentially liable on some other unknown charge, since, in fact, he was not facing any other

charge.  As is evident from this record, Kimpel did not reject the plea, and there is no

evidence he would have done so if he had an explanation of a charge he was not facing.

Accordingly, I recommend finding that the state trial court's decision here was not

contrary to or an unreasonable application of clearly established federal law.

**5.**     ***"Serious physical harm" as a component of felonious assault***

Here, Kimpel contends that he did not understand when he entered his plea what the

term "serious physical harm" meant as used in the statutory definition of felonious assault.[97]

The issue arises in the context of Kimpel admittedly giving his victim two black eyes,

causing injuries to the victim's nose, further causing multiple cuts to the victim's face, and

---

[97] *See*, ECF # 8, Attachment 2 at 60, 63, 65.

breaking some of his ribs, as well as biting him on the hip[98] – injuries which were photographed immediately after the victim's altercation with Kimpel and again several months later.[99]

Kimpel argued at the plea withdrawal hearing that these injuries may not have been such "serious" injuries as would warrant prosecution under the second degree felony statute but, rather, may have been in the nature of injuries as would warrant prosecution under the misdemeanor version.[100]  He further contends that he was not provided by his trial counsel with a precise definition of "serious" physical harm, as that term is used in the statute, prior to entering his plea.[101]  Essentially, he maintains that because the victim's injuries, which did not result in medical treatment, were "non-permanent" and "minor," a reasonable defense attorney would have reduced the charge to a misdemeanor.[102]

I note first that the relevant Ohio statute itself,[103] in pertinent part, defines serious physical harm as:  "(d) any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; [and] (e) any physical harm that involves

---

[98] *Id*. at 56-57.

[99] *Id*. at 73.

[100] *Id*. at 57.

[101] *Id*. at 60.

[102] ECF # 9 at 22.

[103] Ohio Rev. Code § 2901.01(A)(5).

-23-

acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."[104]

I note further that Kimpel's trial counsel testified that he showed Kimpel the color photographs of the victim's injuries.[105]  Counsel further testified that he "was concerned that if a jury sees these photographs that were taken the day of the alleged assault, I was quite concerned that a jury would rule against my client."[106]

In that regard, I also note that, despite Kimpel's suggestion, without supporting citation, that the victim's injuries here do not meet the statutory definition of "serious physical injury" as a matter of law,[107] Ohio case law is to the contrary.  Specifically, while mere facial scratches not needing stitches or other medical attention have been found not to constitute serious physical harm under Ohio law,[108] courts have found that "a bloody, cut and swollen right eye" qualified as serious physical harm under the statute.[109]  Similarly, the Ohio

---

[104] *Id.*

[105] *Id.* at 79.

[106] *Id.* at 80.

[107] ECF # 9 at 21-22.

[108] *In the Matter of Delayn K.*, No. H-00-029, 2000 WL 1838850 (Ohio Ct. App. 6 Dist. Dec. 15, 2000).

[109] *State v. Caster*, No. 87783, 2006 WL 3634857, at *2 (Ohio Ct. App. 8 Dist. Dec. 14, 2006), quoting *State v. Payne*, Cuy. App. No. 76839 (unreported) (July 20, 2000); *see also*, *State v. Reckers*, Nos. C-060451, C-060640, 2007 WL 2066851, at *2 (Ohio Ct. App. 1 Dist. July 20, 2007) (numerous cuts and abrasions ot head and face that left "a scar or indentation" on the head at the time of trial was evidence of "serious physical harm" under the statute).

appeals court in *State v. Norman*[110] determined as a matter of law that "seven facial and neck lacerations and abrasions" where "[o]ne scar was still visible a year after the assault" were "sufficient to constitute serious physical harm because a temporary, serious disfigurement was shown."[111]

Moreover, as concerns injuries that produce a visible scar, Ohio courts have adopted a reading of the relevant statutory language virtually equating a permanent scar with serious physical harm.[112]  As the court reasoned in *State v. Edwards*:[113]

> R.C. 2901.01 distinguishes "permanent disfigurement" from "temporary (serious) disfigurement," in that the "serious" requirement applies only to "temporary disfigurement."  Therefore, assaults which result in permanent disfigurement do not require the state to prove that the permanent disfigurement is also serious.[114]

In this case, the victim had two visible scars four months after being attacked by Kimpel.[115]  Moreover, as noted, it is not disputed that Kimpel was shown photographs of these scars by his trial counsel during discussions with Kimpel of this charge.  It is also clear

---

[110] *State v. Norman*, No. 85938, 2005 WL 3029069 (Ohio Ct. App. 8 Dist. Nov. 10, 2005).

[111] *Id.*, at *4.

[112] I note that Kimpel did not disagree that this correctly states the law.  *See*, ECF # 9, Attachment 2 at 59.

[113] *State v. Edwards*, 83 Ohio App. 3d 357, 614 N.E.2d 1123 (Ohio Ct. App. 10 Dist. 1992).

[114] *Id.*, 83 Ohio App.3d at 360, 614 N.E.2d at 1124-25.

[115] ECF # 9, Attachment 2 at 59.  "[T]his defendant has a permanent scar on his head and a permanent scar on the side of his chest."

that Ohio law holds that a permanent scar is itself sufficient evidence of "serious physical harm" and so further holds that the state is not required to also prove that the scar is serious as well as permanent.

Accordingly, utilizing the standard set forth in *Stumph*, I recommend finding first that the record shows that defense counsel did explain to Kimpel, prior to his tendering the plea, the nature of the charge of aggravated burglary and the elements of that crime.  Although he may not have expressly directed Kimpel to the statutory language defining "serious physical harm," Kimpel knew that "serious physical harm" was an element of the crime and further was led to understand by his counsel, who showed Kimpel the photographs of the victim's scars, that the victim's injuries here were legally sufficient to establish that element.  As discussed, that understanding was not incorrect as a matter of Ohio law.

Thus, because Kimpel was correctly informed as to the nature of the aggravated burglary charge against him and the elements of that crime, he cannot establish the first prong of *Strickland*, as made applicable here by *Hill*, that counsel's action was constitutionally deficient.  Therefore, I recommend finding that the State's decision here, which rests on the finding that counsel's action was reasonable, is itself not an unreasonable application of or contrary to clearly established federal law.

## Conclusion

For the foregoing reasons, I recommend finding that Kimpel's petition for habeas relief should be denied.

Dated:   April 30, 2009                              s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[116]

---

[116] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).