UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                            :
KEVIN KIMPEL                                :
                                            :        CASE NO. 3:08-CV-1026
            Petitioner,                     :
                                            :
vs.                                         :        OPINION & ORDER
                                            :        [Resolving Doc. Nos. 1, 11 & 12.]
CLIFFORD SMITH, WARDEN                      :
                                            :
            Respondent.                     :
                                            :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On April 22, 2008, Petitioner Kevin Kimpel filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 1.]  With his petition, Kimpel seeks relief from a seven-year sentence that an Ohio state court imposed following Kimpel's plea of guilty to one count of aggravated assault, one count of domestic violence, and one count of attempted aggravated burglary. [*Id.* at 2.] Respondent Warden Clifford Smith opposes the petition.  [Doc. 7.]

On April 30, 2009, Magistrate Judge William H. Baughman, Jr. filed a Report and Recommendation that recommended the Court deny the Petitioner's writ. [Doc. 11.] The Petitioner objects to the Magistrate Judge's Report and Recommendation.  [Doc. 12.] For the reasons provided below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Kimpel's request for habeas relief.

## I.  Background

The Court of Common Pleas, Williams County, sentenced Petitioner Kimpel to seven years

Case No. 3:08-CV-1026
Gwin, J.

in prison following Kimpel's plea of guilty to one count of aggravated assault, one count of domestic violence, and one count of attempted aggravated burglary. [Doc. 1 at 2.] The aggravated assault and attempted aggravated burglary charges arose out of the Petitioner's conduct on August 19, 2006. [Doc. 7-1, Ex. 11 at 133.] On this date, police officers responded to a report that a physical altercation between Kimpel and his girlfriend's former boyfriend, Shawn Miller, had taken place at Miller's home. [*Id.*] Miller stated that he had a verbal argument with Kimpel over the telephone and that, following the argument, Kimpel went to Miller's house "to talk." [*Id.* at 134.] Upon Kimpel's arrival, Miller stated that Kimpel forced open the door to the residence, causing damage to the door, and entered the residence. [*Id.*] Kimpel disagreed with this account, stating that Miller opened his door and began attacking him. [*Id.*] Both parties agree that a fight took place. [*Id.*] Police photographs taken of Miller show him having two black eyes, numerous cuts on his face, and a bite mark below his armpit. [*Id.*] Following the altercation, police officers found Kimpel's hat and sunglasses inside Miller's home despite the fact that Kimpel denied ever entering the home. [*Id.*]

The domestic violence charge resulted from a separate incident. On November 29, 2006, in a separate incident, police officers responded to Kimpel's home following a domestic violence call. [*Id.*] While at the home, the officers noted the presence of a large scrape on the right elbow of Kimpel's live-in girlfriend, Janice Reed. [*Id.*] Both of Reed's knees were swollen and red and she had red marks on her neck, a bruise on her chest, and a golf-ball sized knot on the right side of her head. [*Id.*] Reed told police that Kimpel had grabbed her by the throat several times, threw her onto the cement floor and across the washer and dryer. Police said he then continued to choke her until she could no longer breathe. [*Id.*] Kimpel apparently let Reed go before she passed out. [*Id.*]

A Williams County Grand Jury indicted Petitioner Kimpel on the three abovementioned

Case No. 3:08-CV-1026
Gwin, J.

counts on December 20, 2006.  [Doc. 7-1, Ex. 1 at 3.] Kimpel initially pleaded not guilty, but,

following plea negotiations that resulted in a reduction of degree as to two of the counts and a

recommendation of a seven-year sentence, as opposed to one exceeding ten years, he pleaded guilty

to all three counts on February 6, 2007.  [Doc. 7-1, Ex. 2 at 8.]

On March 1, 2007, after replacing his original counsel, Kimpel filed a pre-sentence motion

to withdraw his guilty plea as to all three counts, arguing that his guilty plea was not knowing,

intelligent, and voluntarily due to ineffective assistance of counsel and that he was being denied a trial

by a neutral judicial officer since the judge who accepted Kimpel's change of plea had been the

Williams County prosecuting attorney at the time that Kimpel was indicted.  [Doc. 7-1, Ex. 3 at 13-

15.] The State contended that Kimpel was properly advised regarding his plea both by his attorney

and by the court and had merely had a change of heart.  [Doc. 7-1, Ex. 4 at 17.] Moreover, the State

alleged that the judge presiding over Kimpel's case had no personal knowledge of the case while he

was a prosecuting attorney and that Kimpel was advised of and waived this potential conflict of

interest during the plea colloquy.  [*Id.* at 22.] On March 19, 2007, the court held a hearing on

Kimpel's motion to withdraw the guilty plea and denied this motion. [Doc. 7-1, Ex. 6 at 30.]

On April 5, 2007, the court sentenced Petitioner Kimpel to seven years of incarceration in

conformity with the State's sentencing recommendation. [Doc. 7-1, Ex. 7 at 32-34.] Kimpel, through

counsel, timely appealed to the state court of appeals, setting forth one assignment of error: the trial

court should have granted the defense motion to withdraw [the guilty] plea[] [that was] filed before

sentencing.  [Doc. 7-1, Ex. 8 at 38.] On November 16, 2007, the state court of appeals affirmed the

judgment and sentence of the trial court.  [Doc. 7-1, Ex. 11 at 140.]

Petitioner Kimpel, through counsel, timely appealed the decision of the state court of appeals

Case No. 3:08-CV-1026
Gwin, J.

to the Supreme Court of Ohio, asserting a single proposition of law:  the trial court should have

granted the defense motion to withdraw [the guilty] plea[] [that was] filed before sentencing.  [Doc.

7-1, Ex. 12 at 148.] On March 12, 2008, the Supreme Court of Ohio declined jurisdiction and

dismissed the case because it did not involve any substantial constitutional question.  [Doc. 7-1, Ex.

14 at 183.]

On April 22, 2008, Petitioner Kimpel, proceeding through counsel, filed a petition for a writ

of habeas corpus under 28 U.S.C. § 2254 with this Court.  [Doc. 1.] Kimpel asserted three grounds

for federal habeas relief: (1) the State of Ohio deprived the Petitioner of a meaningful review of

whether his plea was knowing, intelligent, and voluntary; (2) the state appellate court, in ruling on

the appeal, established a new standard for the effectiveness of counsel that cannot be allowed to

stand; and (3) Ohio rules regarding jurisdiction before the Supreme Court of Ohio deprive a person

of a meaningful appeal if the state appellate court bases its decision on a new principle of law that

could not be anticipated.  [*Id.* at 6-9.]

After Respondent Warden Clifford Smith filed a Return of Writ on July 24, 2008, [Doc. 7],

Magistrate Judge Baughman, Jr. filed a Report and Recommendation that recommended the Court

deny Kimpel's petition.  [Doc. 11.] The Petitioner objects to the Magistrate Judge's Report and

Recommendation.  [Doc. 12.] The Court considers each of the Petitioner's objections below.

## II. Legal Standard

*A. Federal Magistrates Act*

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of

those portions of a Report and Recommendation to which an objection has been made.  *See* 28

Case No. 3:08-CV-1026
Gwin, J.

U.S.C. § 636(b)(1). As noted in the Magistrate Judge's Report and Recommendation, any objections must be filed with the Clerk of Court within ten days of the report's issuance. Parties waive their right to appeal the Magistrate Judge's Recommendation if they fail to object within the time allotted. *See id.*

*B. The Antiterrorism and Effective Death Penalty Act*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs collateral attacks on state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller,* 269 F.3d at 614 (quoting *Williams,* 529 U.S. at 412) (internal quotations omitted). A federal habeas court may grant the writ "under the 'unreasonable application' clause . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (citations omitted). The Sixth Circuit holds that, even

Case No. 3:08-CV-1026
Gwin, J.

if a federal court determines that a state court incorrectly applied federal law, the federal court still

cannot grant habeas relief unless it also finds that the state court ruling was unreasonable. *Simpson*

*v. Jones,* 238 F.3d 399, 405 (6th Cir. 2000).

Where a state court "'decides a constitutional issue by form order or without extended

discussion,' the habeas court must conduct an independent review of the record and applicable law."

*Maldonado v. Wilson*, 529 U.S. 362, 476 (6th Cir. 2005) (citing *Harris v. Stovall*, 212 F.3d 940, 943

n.1 (6th Cir. 2000)).  Nonetheless, the "inquiry remains the AEDPA standard of whether the state

court result is contrary to or unreasonably applies clearly established federal law." *Id.* (citing *Harris,*

212 F.3d at 943).

*C. Ineffective Assistance of Counsel*

To prevail on a habeas claim that counsel's assistance was constitutionally ineffective, a

movant must satisfy a two-pronged test.  First, he must show that counsel's performance was

deficient by demonstrating that "counsel made errors so serious that he was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S.

668, 687 (1984).  In evaluating this charge, the court must determine whether, "in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally

competent assistance . . . . [, keeping in mind] that counsel's function, as elaborated in prevailing

professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690.

Judicial scrutiny of counsel's performance is highly deferential and there is a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance.  *See id.* at 689.

Second, the movant must show that counsel's deficient performance prejudiced the defendant

by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial . .

Case No. 3:08-CV-1026
Gwin, J.

. . ." *Id*. at 687.  A habeas petitioner meets the second prong of the test by establishing "that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id*. at 694.  "If it is easier to dispose of an ineffectiveness claim on the

ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. at 697.

     The *Strickland* standard applies to challenges to guilty pleas.  In this context, "the first half

of the *Strickland* . . . test is nothing more than a restatement of the standard of attorney competence

. . . .  The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's

constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,*

*474 U.S. 52, 58-59 (1985)*.  In other words, to satisfy the "prejudice" requirement, "the defendant

must show that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Id*. at 59; *see also Maples v. Stegall,* 340

F.3d 433, 440 (6th Cir. 2003).

### III. Analysis

In his petition for federal habeas relief, Petitioner Kimpel essentially argues that his plea was

not made knowingly, intelligently, or voluntarily due to ineffective assistance of counsel.  All three

grounds for habeas relief presented in Kimpel's petition are bound up in this claim.  Because the

Petitioner fails to demonstrate that  his counsel was ineffective and because the decision of the state

court of appeals was therefore not contrary to and did not involve an unreasonable application of

clearly established federal law, the Court agrees with the Magistrate Judge and denies Petitioner

Kimpel's habeas petition.

"A plea of guilty is more than a confession which admits that the accused did various acts; it

Case No. 3:08-CV-1026
Gwin, J.

is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Because a guilty plea operates as a waiver of significant constitutional rights, it is only valid if it is entered into knowingly, intelligently, and voluntarily. *Bousley v. United States*, 523 U.S. 614, 618 (1998). This standard is satisfied when a criminal defendant is fully aware of the direct consequences of the plea, has been advised by competent counsel, is made aware of the nature of the charges against him, and is in control of his mental faculties. *Id.* at 619.

In this case, Petitioner Kimpel states that before he pleaded guilty, his counsel (1) failed to inform him that Ohio's domestic violence statute was being challenged in Ohio courts as unconstitutional when applied to unmarried persons; (2) did not clearly explain to him that attempted entry into an "occupied structure" was required to prove attempted burglary – the charge to which Kimpel pleaded guilty; and (3) did not clearly explain to him what the term "serious physical harm" meant as it was used in the statutory definition of felonious assault.

The state court of appeals, in addressing Kimpel's first claim, determined that since the constitutional challenge to Ohio's domestic violence statute was ultimately overruled by the Supreme Court of Ohio and the law at the time that Kimpel pleaded guilty was that the statute applied to him, Kimpel was not prejudiced by the fact that his attorney failed to mention any pending challenges to the statute. [Doc. 7-1, Ex. 10 at 137.] This Court also finds that the conduct of Kimpel's counsel does not violate either prong of the *Strickland* standard. Kimpel's counsel was not deficient because he failed to appraise Kimpel of the challenge to the domestic violence statute since he correctly informed Kimpel of the law as it actually existed at the time. Moreover, it is unlikely that Kimpel would have proceeded to trial rather than pleading guilty even if his counsel told him that the

Case No. 3:08-CV-1026
Gwin, J.

domestic violence statute could be altered at some future time by a court decision.

The Court also finds to be without merit Petitioner Kimpel's argument that his counsel was ineffective because he did not clearly explain to him that attempted entry into an "occupied structure" was required to prove attempted burglary.  As the record of the plea withdrawal hearing demonstrates, Kimpel conceded that he understood the plain meaning of the term "occupied structure." [Doc. 8-2 at 39.] The overall record also shows that Kimpel and his attorney had extensive discussions concerning the aggravated burglary count and how the facts of the case affected Kimpel's liability for this charge. [Doc. 8-2 at 39-46.] Significantly, even though Kimpel's lawyer understood that Kimpel "believed he had never entered the home,"[*id.* at 46], he was aware that some of Kimpel's personal property was found inside the home and that, as a result, "there was some risk that a jury might believe that [Kimpel] did enter the home in question . . . . ,"[*id.*]

Contrary to Kimpel's assertion in his second ground for habeas relief, the state court of appeals did not formulate a new standard for effectiveness of counsel when evaluating and rejecting this claim. The state court of appeals stated that an "alleged failure to disclose an *exact* statutory definition,"[Doc. 7-1, Ex. 10 at 136], of a charge does not, absent any additional evidence, constitute ineffective assistance.  This conclusion is consistent with the clearly established federal law on point. As the Supreme Court held in *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005), "the constitutional prerequisites of a valid plea may be satisfied where the record adequately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."

Kimpel's counsel satisfied the standard articulated in *Bradshaw*.  As evidenced by his uncontroverted testimony, he explained to Kimpel the elements of proof in the indictment, the charges

Case No. 3:08-CV-1026
Gwin, J.

in the indictment, the facts in the case as they related to the indictment, and the possibility of reducing two of the charges. [Doc. 8-2 at 51.] Thus, Kimpel cannot (and does not) demonstrate that his trial counsel was deficient under the first element of the *Strickland* standard. Moreover, Kimpel has not established that he would have proceeded to trial had his counsel given him an exact statutory definition of aggravated trespassing and therefore he does not satisfy the second prong of *Strickland.* Despite Kimpel's contention that he did not enter the home in question, Kimpel's counsel was concerned that a jury would not believe him because Kimpel's personal effects were later found inside the home and he explained this concern to Kimpel. In light of these facts, it is highly unlikely that Kimpel would have rejected the plea and proceeded to trial even if his counsel had provided him with the exact elements of aggravated trespassing.

Finally, the Court rejects Kimpel's argument that his counsel was ineffective because he did not adequately explain the meaning of the term "serious physical harm," as it was used in the statutory definition of felonious assault. As a result of his altercation with Kimpel, the victim in this case had two black eyes, an injured nose, multiple cuts to his face and forehead, several broken ribs, and a bite mark on his body. [Doc. 8-2 at 58-59.] These injuries were photographed immediately after the altercation and again several months later. [*Id.* at 75.] The victim still had two visible and permanent scars four months after being attacked by Kimpel. [*Id.* at 61.] At the plea withdrawal hearing, however, Kimpel argued that these injuries may not have been serious enough to warrant a prosecution under the second degree felony statute, [*id.* at 59], and that his counsel never provided him with a precise definition of "serious physical harm," [*id.* at 62.]

The conduct of Kimpel's counsel with respect to this issue was not ineffective under *Strickland.* First, the relevant Ohio statute defines serious physical harm as "any physical harm that

-10-

Case No. 3:08-CV-1026
Gwin, J.

involves some permanent disfigurement or that involves some temporary, serious disfigurement; [and] any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." O.R.C. § 2901.01(A)(5).  Under current Ohio case law, the injuries of the victim in this case would satisfy the "seriousness" requirement of the statute.  *See State v. Caster*, No. 87783, 2006 WL 3634857, at *2 (Ohio Ct. App. Dec. 14, 2006) (holding that a bloody, cut, and swollen eye qualified as serious physical harm under the statute); *State v. Norman*, No. 85938, 2005 WL 3029069, at *4 (Ohio Ct. App. Nov. 10, 2005) (concluding that "seven facial and neck lacerations and abrasions" where "[o]ne scar was still visible a year after the assault" were "sufficient to constitute serious physical harm because a temporary, serious disfigurement was shown").

Kimpel's trial counsel also testified that he showed Kimpel the color photographs of the victim's injuries, [Doc. 8-2 at 81], and that he was concerned that a jury would find Kimpel guilty if they saw the photographs taken on the day of the altercation, [*id.* at 82.] Further, Kimpel's attorney discussed the victim, the nature of the aggravated burglary charge, potential defenses, and the state's case with Kimpel. [*Id.* at 81- 82.]

Although Kimpel's trial counsel did not expressly explain to Kimpel the meaning of "serious physical harm," he did inform Kimpel about the nature of the charges against him; his understanding of the Ohio case law on point and of the strength of the state's case was reasonable, if not wholly correct.  As a result, Kimpel cannot demonstrate that his counsel was deficient under the first prong of *Strickland.*  Additionally, Kimpel cannot satisfy the second element of *Strickland* because he cannot show that he would have proceeded to trial rather than pleading guilty if the term "serious physical harm" would have been expressly explained to him.  Because the decision of the state court

-11-

Case No. 3:08-CV-1026
Gwin, J.

of appeals rested on a finding that the conduct of Kimpel's attorney was not constitutionally improper, the Court finds that the decision was not contrary to and did not involve an unreasonable application of clearly established federal law. The Court therefore agrees with the Magistrate Judge and denies Petitioner Kimpel's habeas petition.

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Kevin Kimpel's § 2254 petition. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and no basis exists upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

Dated: May 11, 2009                    s/      *James S. Gwin*
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE